**STATE OF CALIFORNIA, Plaintiff,**

v.

**DEPARTMENT OF the NAVY, Defendant.**

**No. C–85–3830–MHP.**

United States District Court, N.D. California.

April 2, 1986.

---

## OPINION

PATEL, District Judge.

The State of California ("State") brings this action against the United States Department of the Navy ("Navy") for alleged violations of a state water pollution discharge permit. The relief sought by the State is the imposition of civil penalties. The Navy moves to dismiss the complaint or, alternatively, for summary judgment; the State cross-moves for partial summary judgment.

For the reasons discussed below, the court concludes that the State has no federal cause of action against the Navy and that the court therefore is without jurisdiction to entertain the State's suit. Accordingly, the Navy's motion to dismiss is granted.

BACKGROUND

The Navy operates a waste treatment plant at its military installation on Treasure Island. The plant is operated pursuant to a National Pollutant Discharge Elimination System (NPDES) permit, issued by the California Water Quality Control Board ("Board"), which specifies the type and amount of pollutants that may be discharged into the San Francisco Bay.

According to the complaint, from October 1983 through July 1984 the Navy on several occasions violated the terms and conditions of the permit by discharging waste that was improperly treated. On July 18, 1984 the Board adopted an order requiring the Navy to cease and desist the unlawful discharge. Apparently, since July 1984 the Navy has been in compliance with both the Board's order and the terms and conditions of the permit.

On October 17, 1984 the Board requested the California Attorney General to seek civil penalties against the Navy for the violations which allegedly occurred between October 1983 and July 1984. The State issued a Notice of Intent to File Suit

on March 19, 1985, notifying the Administrator of the Environmental Protection Agency ("Administrator") and the Navy of its intent to seek civil penalties in federal court. No action was taken by the Administrator and, on June 13, 1985 the State filed this action seeking civil penalties of up to $10,000 for each day from October 1983 through July 1984 on which the Navy violated the permit.

DISCUSSION

A. *Statutory Background*

The Clean Water Act ("Act"), 33 U.S.C. §§ 1251, *et seq.*, is a "complicated and lengthy statute." *Aminoil U.S.A., Inc. v. California State Water Resources Control Board*, 674 F.2d 1227, 1229 (9th Cir. 1982), *quoting American Frozen Food Inst. v. Train*, 539 F.2d 107, 113 (D.C.Cir. 1976). Its purpose is to eliminate pollutant discharges into the navigable waters of the United States by 1985. 33 U.S.C. § 1251(a)(1). Toward that end, the Act establishes a permit system and expressly prohibits any discharge not specifically authorized by permit. 33 U.S.C. § 1311(a); Act § 402, 33 U.S.C. § 1342.

The Act creates a "cooperative federal-state scheme for the control of water pollution," *Shell Oil Co. v. Train*, 585 F.2d 408, 409 (9th Cir.1978), including the issuance and enforcement of discharge permits. Although the Administrator has initial authority to issue permits, the Act provides that each state may establish and administer its own permit program. 33 U.S.C. §§ 1342(a), (b). The Administrator must approve a state program unless he or she determines that the program does not provide the state with "adequate authority" to enforce the Act. 33 U.S.C. § 1342(b).

Once a state program is approved, the Administrator must "suspend the issuance of" any federal permit covering the navigable waters subject to the state program. 33 U.S.C. § 1342(c)(1). Although enforcement authority then rests primarily with the state, the Administrator retains certain oversight authority over the state program. The Administrator may veto particular permits issued by the state, and may withdraw

approval of the entire state program if he or she determines that the program is not being administered in accordance with the requirements of Act. 33 U.S.C. §§ 1342(c)(3), (d)(2). Furthermore, if the state fails to take "appropriate enforcement action" against a polluter who violates the state-issued permit, the Administrator must either issue an order requiring compliance with the permit or bring a civil action against the polluter. 33 U.S.C. § 1319(a)(1). As the Ninth Circuit has noted, however, "[d]espite this residual federal supervisory responsibility the federal-state relationship established under 33 U.S.C. § 1342 is 'a system for the mandatory approval of a conforming State program and the consequent suspension of the federal program [which] creates a separate and independent State authority to administer the NPDES pollution controls.'" *Shell Oil*, 585 F.2d at 410, *quoting Mianus River Preservation Committee v. Administrator, EPA*, 541 F.2d 899, 905 (2d Cir. 1976). Thus, although the Act grants the Administrator the authority in the first instance to issue NPDES permits, "Congress clearly intended that the states would eventually assume the major role in the operation of the NPDES program." *Shell Oil*, 585 F.2d at 410.

B. *Jurisdiction Under § 505*

■ It is, of course, well-established that the United States cannot be sued without its consent and that "the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980), *quoting United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1057 (1941). In deciding whether § 505 provides this court with jurisdiction to entertain the state's action, the court is bound by the general rule that waivers of sovereign immunity must be construed strictly in favor of the sovereign and should not be enlarged beyond what the language of the waiver requires. *Ruckel-*

*shaus v. Sierra Club,* 463 U.S. 680, 685, 103 S.Ct. 3274, 3277, 77 L.Ed.2d 938 (1983).

Section 505(a) of the Act provides that "any citizen may commence a civil action on his own behalf—(1) against any person (including (i) the United States ...) who is alleged to be in violation of (A) an effluent standard or limitation under this chapter...." 33 U.S.C. § 1365(a). Section 505(f)(6) explains that "effluent standard or limitation" includes "a permit or condition thereof issued under section 1342." Section 1342 provides for the issuance of state permits. Thus, under § 505 a "citizen" may bring a suit in federal court against the United States for violation of a state permit. Where such an action is brought, § 505(a) authorizes the district court to "apply any appropriate civil penalties under section 1319(d)." The State contends that it is a "citizen" within the meaning of § 505 and that the court therefore has jurisdiction under § 505 to consider its action for civil penalties against the Navy.

Section 505(g) defines "citizen" to mean "a person or persons having an interest which is or may be adversely affected." Section 502(5), the general definitions provision of the Act, defines "person" to include a state or political subdivision of a state. 33 U.S.C. § 1362. Applying these definitions literally, a state is a "citizen" within the meaning of § 505.

■ Unfortunately, it is not that simple. As one court has noted, "[w]hile it is true that things equal to the same things are equal to each other, the provisions of 33 U.S.C. § 1365 preclude the mechanical application of this g[e]ometrical theorem." *United States v. City of Hopewell,* 508 F.Supp. 526, 528 (E.D.Va.1980). Close inspection of the provisions of § 505, as well as the statutory scheme generally, convinces the court that Congress did not intend to authorize states to bring "citizen suits" under § 505.

Section 505(b)(1)(B) expressly provides that a citizen may not bring an action against a polluter if the Administrator *or state* has already commenced and is diligently prosecuting a civil or criminal action in court. Any state bringing an action under § 505 faces an obvious dilemma—the state must show it is *not* diligently pursuing its remedies under the state program. Since such a showing is a prerequisite to suit under § 505, it is unlikely Congress intended states could take advantage of the citizen suit provision.

Similarly, under § 505(b)(1)(A) a citizen suit may not be commenced until notice of the alleged violation has been given to the Administrator, *the state* in which the alleged violation occurs, and the alleged violator. It makes little sense to require the state to provide *itself* with 60 days notice before it brings an action. Although the language of § 505(b)(1)(A) does not preclude its application to actions commenced by a state, it does suggest Congress did not contemplate that states would be bringing "citizen suits" under § 505.

Section 505(h) lends additional support to this conclusion. Section 505(h) specifically authorizes the governor of a state to "commence a civil action under subsection (a) of this section, without regard to the limitations of subsection (b) of this section, against the Administrator where there is alleged a failure of the Administrator to enforce an effluent standard or limitation under this chapter the violation of which is occurring in another State and is causing an adverse effect on the public health or welfare in his State, or is causing a violation of any water quality requirement in his State." Yet § 505(a)(2) already provides for suits by "citizens" against the Administrator where the Administrator fails to perform "any act or duty under this chapter." If states are "citizens" under § 505, the authorization under § 505(h) would be superfluous.[1]

---

1. It is arguable that the purpose of § 505(h) is not to authorize civil suits by states but to waive the requirements of § 505(b) in a small class of suits already authorized under § 505(a)(2). Under this interpretation if states were "citizens" under § 505, § 505(h) would not be superfluous. A number of factors militate against such a construction, however.

Furthermore, the existence of express authorization in § 505(h) counsels against the court implying a state cause of action under § 505(a). As the Supreme Court has often noted, "it is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it." *Middlesex County Sewerage Authority v. National Sea Clammers Ass'n*, 453 U.S. 1, 14–15, 101 S.Ct. 2615, 2623, 69 L.Ed.2d 435 (1981) (quoting *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 19, 100 S.Ct. 242, 246, 62 L.Ed.2d 146 (1979)).

In addition to the anomalies that would be created with respect to the individual provisions discussed above, construing "citizen" to include states would be inconsistent with the overall statutory scheme of the Act. The Act clearly envisions that the states will be the primary enforcers of the pollution laws and that the Administrator, and then "citizens," will bring suits against polluters only when a state fails to take appropriate action. The legislative history of the Act, while not conclusive, supports this interpretation.

There is no mention or discussion anywhere in the legislative history of the possibility of states bringing "citizen suits" under § 505.[2] On the contrary, throughout the legislative history the citizen suit provision is referred to in such a way as to strongly suggest Congress intended § 505 to provide an *alternative* to state and federal enforcement. For instance, the Senate Report on the 1972 amendments states that, "*if Federal, State and local agencies* fail to exercise their enforcement responsibility, the *public* is provided the right to such vigorous enforcement action under the citizen suit provision of section 505." S.Rep. No. 414, 92d Cong., 1st Sess. 64 (1971), U.S.Code Cong. & Admin.News 1972, pp. 3668, 3730, *reprinted in A Legislative History of the Water Pollution Control Act Amendments of 1972* (hereafter, *"Legislative History"*), Congressional Research Service, Library of Congress, vol. 2 at 1482 (emphasis added). Similarly, the Senate Report states that the purpose of requiring "a citizen or groups of citizens" to serve notice before bringing suit is to "encourage and provide for agency enforcement" by the "federal and state water

First, the subsection is specifically captioned "Civil Action by State Governor." Second, the subsection uses "authorizing" language, i.e., "A Governor of a State may commence a civil action under subsection (a) of this section ...", and a waiver of notice requirement is contained in a subsidiary clause. If the purpose of the provision was simply to waive the requirements of § 505(b), the authorizing language would not be needed and, indeed, would be confusing. All that would be needed is language exempting the requirements of subsection (b).

Third, § 505(h) deals only with those cases in which pollution in one state is causing an adverse effect in another state. It is hard to imagine why Congress would want to waive the requirements of § 505(b) only in this small class of cases. On the other hand, it hardly seems coincidental that § 505(h) addresses the one situation in which a state would otherwise lack sufficient authority to control pollution under its own state program and state law—where the polluter is located in another state. It seems clear that § 505(h) was intended to provide a federal remedy to states in the limited class of cases in which no adequate state remedy exists.

Significantly, in explaining the import of § 505(h), the House Report to H.R. 11896 stated that § 505(h) "would specifically provide that a Governor of a state may bring a suit against the Administrator to compel him to seek abatement of pollution which originates in another State and affects the Governor's state." H.R.Rep. No. 911, 92d Cong. 2d Sess. 133, *reprinted in A Legislative History of the Water Pollution Control Act Amendments of 1972*, Congressional Research Service, Library of Congress, vol. 1 at 820. Conspicuously absent is any reference to the waiver of the notice requirement under § 505(b).

Finally, the court notes that the fact that § 505(h), while authorizing actions by the states, waives the notice requirements of § 505(b), supports the court's earlier conclusion that the requirements of § 505(b) are inconsistent with an interpretation of "citizen" to include states.

2. Although there was considerable discussion in the debates and Committee reports regarding the definition of "citizen" under § 505, this discussion concerned whether Congress should impose certain *standing* restrictions on those authorized to bring suit under § 505; the discussion was unrelated to, and does not bear on, the question whether the definition of "citizen" under § 505 includes states.

pollution control agenc[ies]." *Id.* at 79–80, U.S.Code Cong. & Admin.News 1972, p. 3745, *reprinted in* 2 *Legislative History* at 1497–98. Elsewhere, the Senate Report distinguishes between enforcement sought by an agency, and that sought by "a citizen." *Id.* at 80–81, *reprinted in* 2 *Legislative History* at 1498–99. A similar distinction is drawn by the Conference Report which makes clear that "[i]f the Administrator or a *State* begins a civil or criminal action *on its own* against an alleged polluter, no court action could take place on the *citizen's* suit." Conf.Rep. No. 1236, 92d Cong., 2d Sess. 145 (1972), U.S.Code Cong. & Admin.News 1972, p. 3823, *reprinted in* 1 *Legislative History* at 328 (emphasis added).

Similarly, the legislative history is replete with references to § 505 as providing an opportunity for "citizen participation" through civil actions by "members of the public" or "individual citizens and environmental groups." S.Rep. No. 414, *supra,* at 79, *reprinted in* 2 *Legislative History* at 1497; Conf.Rep. No. 1236, *supra,* at 145, *reprinted in* 1 *Legislative History* at 328; H.Rep. No. 911, 92d Cong., 2d Sess. 122, 407, 417, *reprinted in* 1 *Legislative History* at 819, 876, 886. In the same vein, the Senate Report states that § 505 authorizes a *"private action* by any citizen or citizens acting on *their own behalf,"* noting that by bringing such actions, "citizens would be performing a public service." S.Rep. No. 414, *supra,* at 81, U.S.Code Cong. & Admin.News 1972, p. 3747, *reprinted in* 2 *Legislative History* at 1499.

Significantly, the legislative history contains no mention of § 502(5) (defining "persons" to include states) in connection with the definition of "citizen" under § 505. Indeed, the only reference in the legislative history directly addressing the *scope* of the term "citizen" suggests that Congress did

not have § 502(5) in mind when it defined "citizens" under § 505 to include "persons."[3] During the Senate Debate on the Conference Report, Senator Bayh asked whether "citizen", as defined in § 505, included "a group of persons, like a club, or a corporation, or an unincorporated association." 1 *Legislative History* at 221. Senator Muskie reassured Senator Bayh that such groups would be authorized to bring an action under § 505, noting that "[t]he definition of 'citizen' includes 'persons' and ... [u]nder section 1 of title 1 of the United States Code, the word 'person' would be so defined." *Id.* This suggests that in defining "citizens" to include "persons" under § 505, Congress (or at least Senator Muskie) had in mind the definition of "person" contained in 1 U.S.C. § 1, rather than the definition provided in § 502(5). The definition of "person" under 1 U.S.C. § 1 does *not* include states.[4]

The court is aware of only four cases which have addressed the issue raised here. In *Commonwealth of Massachusetts v. United States Veterans Administration,* 541 F.2d 119, 121 n. 1 (1st Cir.1976), the court held, in what appears to be dicta, that a state is a "citizen" within the meaning of § 505(a)(1). The court relied solely on the definitions of "person" and "citizen" contained in § 502(5) and § 505(g), respectively, without any reference to or discussion of the potential inconsistency between these definitions and other provisions of the Act.

Similarly, in *People of State of Illinois v. Outboard Marine Corp.,* 619 F.2d 623, 631 (7th Cir.1980), *vacated and remanded on other grounds,* 453 U.S. 917, 101 S.Ct. 3152, 69 L.Ed.2d 1000 (1981), the court relied on the statutory definitions in holding that a state is a "citizen" for purposes of § 505(b)(1)(B) which authorizes a citizen to intervene in any action brought in feder-

---

3. It should be noted that the definition of "person" to include a state was not a part of the 1972 amendments but, rather, was added to the Act in 1956. Pub.L. No. 660, § 1, 70 Stat. 504 (1956). This may explain why Congress did not have § 502(5) in mind when it enacted § 505 in 1972.

4. Section 1 defines "person" to include "corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals."

al court. In *National Wildlife Federation v. Ruckelshaus*, 99 F.R.D. 558, 560 (D.N.J. 1983), another case involving § 505(b)(1)(B), the court stated that "[i]t is well settled that a state is a citizen within the meaning of this section and thus authorized to bring suit." The court simply cited *Commonwealth of Massachusetts*, without further discussion. It does not appear that the state's status as a citizen was a contested issue in any of these cases.

In contrast, the issue was directly raised and discussed at some length by the court in *United States v. City of Hopewell*, 508 F.Supp. 526 (E.D.Va.1980). The court acknowledged the statutory definitions and the First Circuit's holding in *Commonwealth of Massachusetts*, but concluded that "the specific provisions of [§ 505] preclude acceptance of the concept of a State filing an action under [§ 505] as a citizen or intervening as a citizen under that section." *Id.*, at 529. In so holding, the *Hopewell* court relied on the language of § 505(a) and (b)(1)(B), the express limited authorization provided in § 505(h) and the lack of any mention in the legislative history of the possibility that a state might bring a citizen suit under § 505. *Id.*, at 528–29.

For the reasons already discussed, the court agrees with the conclusion reached by the court in *Hopewell*. Because the State is not a "citizen," it has no federal cause of action under § 505 and the court therefore lacks jurisdiction under that section to entertain the State's suit for civil penalties.[5]

---

**5.** The state argues that "[s]ince the states have a *parens patriae* right to represent their citizens, there is no reason in logic or policy to exclude them from maintaining citizen actions under § 505." (State's Brief at 20). It is hard to see how the concept of *parens patriae* supports the State's interpretation of "citizen suits" under § 505 given that § 505 was enacted precisely for the purpose of allowing citizens to sue on their *own behalf* when the state *fails* to perform its duty as the citizens' representative by bringing an enforcement action itself.

Moreover, the question is not whether it is logical or wise policy for the court or Congress to "exclude" states from bringing citizen suits under § 505. Rather, the question is simply

## C. *Jurisdiction Under § 309*

■ The state argues that, independent of the citizen suit provisions of § 505, the court has jurisdiction over this action under § 309(d), 33 U.S.C. § 1319(d). Section 309(d) provides that any person who violates certain enumerated sections of the Act or any condition or limitation in a permit issued either by the Administrator or a state, "shall be subject to a civil penalty not to exceed $10,000 per day of such violation." The State notes that § 309(d) "does not indicate whether the Administrator or the state is authorized to seek the penalties," and argues that "[t]he creation of a substantive liability for violation of state law logically creates a right for the state to enforce the liability." (State's Brief at 28).

First, although it is true that subsection (d) itself does not indicate exactly who is authorized to seek civil penalties under that section, it seems clear from § 309 generally that Congress intended § 309(d) to authorize only the Administrator to seek civil penalties.[6] Section 309(a), (b), and (f) all expressly authorize the *Administrator* to bring a civil enforcement action in federal court under various circumstances. Subsection (c) provides for criminal penalties, subsection (d) provides for civil penalties, and subsection (e) provides that where the *Administrator* brings an action against a municipality, the state in which the municipality is located must be joined as a party and will be liable for any damages or expenses incurred by the municipality. Nowhere in § 309 is there any indication that

whether *Congress* intended to *include* states as "citizens" within the meaning of § 505. In view of the strict reading that must be given when sovereign immunity is at stake the intent to include states must be clearer than it is now. As already discussed, the court concludes that Congress did not intend to include states as citizens under § 505.

**6.** Significantly, in authorizing citizen suits under § 505(a), Congress apparently felt it necessary to expressly provide for the imposition of § 309(d) civil penalties. This suggests that Congress did not intend § 309 to authorize civil penalties in all federal actions regardless of who brings the action.

Congress intended to authorize that actions under state law be brought in federal court; the section is wholly concerned with actions brought by the Administrator.[7]

Furthermore, contrary to the State's contention, the mere authorization of civil penalties under § 309(d) does not create a right of enforcement or cause of action in the states. The state confuses the concepts of "cause of action" and "relief." Section 309(d) authorizes a specific form of "relief" which may be obtained in actions against polluters who violate their statutory obligations under the Act. As the Supreme Court explained in *Davis v. Passman*, 442 U.S. 228, 239, 99 S.Ct. 2264, 2273, 60 L.Ed.2d 846 (1979):

> In cases such as these, the question is which class of litigants may enforce in court legislatively created rights or obligations. If a litigant is an appropriate party to invoke the power of the courts, it is said that he has a "cause of action" under the statute, and that this cause of action is a necessary element of his "claim." So understood, the question whether a litigant has a "cause of action" is analytically distinct and prior to the question of what relief, if any, a litigant may be entitled to receive. The concept of a "cause of action" is employed specifically to determine who may judicially enforce the statutory rights or obligations. (Footnote omitted).

Section 309(d) no more creates a federal civil "cause of action" or right of enforcement in the State than § 309(c) creates a "cause of action" in the State to bring a federal criminal action in federal court against alleged polluters.[8]

■ Nor is there any basis on which the court can *imply* a cause of action on behalf of the state. Under § 309 Congress expressly authorized the Administrator to bring civil actions and impose civil penalties against polluters in federal court. Similarly, under § 505 Congress created a private right of action for citizen enforcement, again expressly providing for civil penalties. Congress has demonstrated that it knows how to provide a federal right of action for civil penalties when it wants to do so; it apparently chose not to create such a right of enforcement in the states. Under these circumstances the court must decline the State's invitation to imply such a right of enforcement where none has been expressly provided by Congress.[9]

---

7. This is further evidenced by the House Report on H.R. 11896, which states in part: "The provisions of section 309 are supplemental to those of the State and are available to the *Administrator* in those cases where local, State, or interstate enforcement agencies will not or cannot act expeditiously and vigorously to enforce the requirements of this Act." H.R.Rep.No. 911, 92d Cong., 2d Sess., *reprinted in* 2 *Legislative History* at 802 (emphasis added). Elsewhere the House Report notes that "a tough and meaningful provision has been included on *Federal* enforcement (section 309) to insure that the *Administrator* is not limited in protecting the rights of the public." *Id.* at 819 (emphasis added).

8. Contrary to the State's contention, nothing in the EPA's Civil Penalty Policy suggests a different conclusion. Env.Rep., Federal Laws [BNA], 41:1102–1110 (July 8, 1980). Although the EPA states a number of times that the policy is intended to be used by federal *and* state enforcement officials, it is clear the EPA contemplated that the general policy guidelines would be used by *federal* officials in imposing *federal* penalties and by *state* and local officials in imposing *state* civil penalties. Nothing in the policy suggests

the EPA interprets § 309(d) to authorize states to seek civil penalties in federal court under § 309(d).

9. There is nothing necessarily anomalous about Congress providing a federal right of enforcement for the Administrator and private citizens but not for the states. Congress clearly contemplated that states would seek civil and criminal penalties in *state* court under *state* law. For instance, § 402 authorizes the Administrator to deny approval to any state program which fails to provide the state sufficient authority *under state law* "[t]o abate violations of the permit or the permit program, including *civil and criminal penalties* ... (emphasis added). 33 U.S.C. § 1342(b)(7). Similarly, the preamble to the EPA's regulations provides that, "all state programs must have both civil penalties and criminal sanctions. Fines and penalties must be recoverable *under State law;* a State program *cannot rely on the levying of federal fines* ... since the State, not EPA is to have primary enforcement authority upon program approval." 45 Fed.Reg. 33,382–83 (May 19, 1980) (emphasis added).

Something of an anomaly is created, however, in cases like this one in which an action is

CONCLUSION

Neither § 505 nor § 309(d) provides the State with a cause of action to seek civil penalties against the Navy in federal court. The state suggests no other statutory basis for its action and the court is aware of none. For the foregoing reasons, the Navy's motion to dismiss is granted.[10]

IT IS SO ORDERED.

brought against the federal government seeking civil penalties. Section 313 of the Act, as amended in 1977, provides that federal installations "shall be subject to, and comply with, all Federal, State, interstate, and local requirements, administrative authority, and process and sanctions respecting the control and abatement of water pollution in the same manner, and to the same extent as any nongovernmental entity." 33 U.S.C. § 1323. At the same time, however, § 313 limits federal liability for civil penalties to "those civil penalties arising under federal law or imposed by a State or local court to enforce an order or the process of such court." If, as the state seems to assume, a state may not recover civil penalties against the federal government in an action brought in state court (an assumption upon which the court expresses no opinion), the state would *never* be able to recover civil penalties against a federal polluter. However, a private citizen (under § 505) or the Administrator (under § 309) could bring an action for civil penalties against a federal agency, but the primary enforcers of the Act—the states—could not. Indeed, it would appear that the State Attorney General could bring an action for civil penalties in his own name as a private citizen but could not do so on behalf of the state.

It seems unlikely that Congress intended to create this hiatus, especially in light of the primary enforcement role envisioned for the states. However, if, as the court suspects, this was not Congress' intent, it is up to Congress to fill the gap it created.

10. In light of the court's holding it is unnecessary to address the other issues raised by the parties.