The Honorable Douglas Johnston State Representative, 92nd District State Capitol, Room 284-W Topeka, Kansas 66612
Dear Representative Johnston:
You have requested our opinion concerning several issues relating to the environmental aspects of animal production facilities. You state that your questions have arisen as a result of the construction of animal production facilities throughout the State of Kansas.
You initially ask whether the provisions of a National Pollutant Discharge Elimination System permit are enforceable separately from a state's requirements for a water pollution control permit. The State of Kansas administers the NPDES permit program under the Federal Water Pollution Control Act, commonly referred to as the Clean Water Act,33 U.S.C. § 1251 et seq. The Act prohibits the discharge of any pollutant into navigable waters without a permit authorizing such discharge under the Act's provisions. 33 U.S.C. § 1311 (a). "Navigable waters" is defined as "the waters of the United States." 33 U.S.C. § 1362
(7). While the United States Environmental Protection Agency (EPA) has transferred the NPDES permit-issuing function to the State of Kansas pursuant to 33 U.S.C. § 1342 (b), the EPA is authorized to enforce the provisions of the Clean Water Act, and can therefore enforce provisions of a state-issued NPDES permit that are consistent with federal law.33 U.S.C. § 1319. However the EPA is not authorized to enforce a permit provision regulating discharges to groundwater because the Clean Water Act does not extend to subsurface waters. The Courts have clearly established that Congress did not intend the Clean Water Act to extend federal regulatory and enforcement authority over groundwater contamination. Kelley, ex rel. Michigan v. United States,618 F. Supp. 1103 (W.D.Mich. 1985), Exxon Corp. v. Train, 554 F.2d 1310,1322 (5th Cir. 1977).
Therefore, a permit which authorizes discharges of sewage to groundwater is issued pursuant to State requirements, rather than federal law, and would only be enforceable by the State of Kansas. See K.S.A. 1997 Supp. 65-165. While the authority of the EPA is limited to enforcing federal law, the State of Kansas is authorized to enforce both federal and state requirements of a discharge permit. K.S.A. 65-170e;33 U.S.C. § 1319, 1342.
You next ask what the word "prevent" means as it is used in NPDES permits issued to the operators of confined animal feeding operations. The Kansas Agricultural and Related Waste Control Permit and National Pollution Discharge Elimination System Permit issued by KDHE require that "the water pollution control facilities shall be operated and maintained to prevent the discharge of water pollutants into the waters of the State," and "that practices and procedures employed to apply livestock or related agricultural wastes, waste waters, and runoff upon agricultural land shall be prudently conducted to prevent water pollution." The permits also provide that "[l]ivestock wastes (both liquid and solid) shall be applied to land using rates and methods that prevent surface runoff of pollutants and leaching of pollutants to groundwater."
We could find no definition of "prevent" in any of the applicable state or federal laws or regulations. In determining the meaning of words used in a statute, it is presumed that the Legislature intended to use words in their ordinary and common sense. Chavez v. Markham, 256 Kan. 859, Syl. ¶ 2 (1995). "Prevent" is generally defined as "to meet or satisfy in advance" and "to keep from happening or existing." Merriam Webster's Collegiate Dictionary 924 (1996). Unless expressly defined otherwise in a permit, it is our opinion that the word "prevent" would have the ordinary, common meaning as defined above.
Your next two questions are whether the Kansas Legislature could require KDHE to perform testing on the wastewater lagoons of privately-owned confined animal feeding operations and to study the cumulative environmental impacts resulting from confined animal feeding operations. These questions may raise Constitutional issues concerning separation of powers granted to the Legislature and to the executive branch of government, and issues concerning entry by the government onto private property. While there is no express provision in the Kansas Constitution mandating a separation of powers, the Kansas Supreme Court has found the doctrine to be implied in the organization of the state government into the executive, legislative and judicial branches. Parcell v. State of Kansas, 468 F. Supp. 1274, 1278 (D.Kan. 1979). The separation of powers doctrine is intended to avoid a dangerous concentration of power in the hands of a single group and to allow the respective powers of government to be carried out by the department most fitted to exercise them. State, ex rel., v. Bennett, 219 Kan. 285, 287
(1976).
One of the issues raised by your questions is whether, in requiring KDHE to perform certain tasks, the Legislature would be exerting power over the agency to the extent the Legislature usurps the agency's constitutional power to enforce the laws of the State. Kan. Const., Art. 1, § 3. In Bennett, the Court explained that "[a] usurpation of powers exists where there is a significant interference by one department with operations of another department." 219 Kan. at Syl. ¶ 4. It seems clear that the Legislature's enactment of a statute requiring KDHE to perform wastewater lagoon testing or to study the impact of confined animal feeding operations would not constitute undue interference by the Legislature with KDHE's powers because, in doing so, the Legislature would merely be exercising it's legislative powers. However, if the Legislature informally directs such testing and study without passing a statute, it may be acting outside it's legislative power, giving rise to a potential violation of the separation of powers. See State ex rel. Stephan v. Kansas House of Representatives, 236 Kan. 45, 64 (1984).
Another potential issue raised by these questions is whether KDHE would need to enter onto private property to conduct the testing and study you reference and, if so, whether they have authority to do so. A statute which requires KDHE to conduct testing should authorize KDHE officials to enter onto private property, if necessary, to conduct the testing. Such authorization should meet the constitutional requirements for governmental entry onto privately-owned property. See City of Overland Park v. Niewald, 258 Kan. 679, 687 (1995); Camara v. Municipal Court,387 U.S. 523, 18 L.Ed.2d 930, 87 S.Ct. 1727 (1967).
The next question you ask is whether K.S.A. 1997 Supp. 65-171d(e)(1), which requires KDHE to issue an order prohibiting refuse in any surface pond that is causing or is likely to cause pollution, creates any legally enforceable duties with respect to the Secretary of KDHE. We assume that your inquiry is limited to any duties imposed by this statute on the Secretary as a result of the activities of a confined animal feeding operation. K.S.A. 1997 Supp. 65-171d(e)(1) states:
 "Whenever the secretary of health and environment or the secretary's duly authorized agents find that the soil or waters of the state are not being protected from pollution resulting from underground storage reservoirs of hydrocarbons and liquid petroleum gas or that storage or disposal of salt water not regulated by the state corporation commission or refuse in any surface pond is causing or is likely to cause pollution of soil or waters of the state, the secretary or the secretary's duly authorized agents shall issue an order prohibiting such underground storage, reservoir or surface pond. Any person aggrieved by such order may within 15 days of service of the order request in writing a hearing on the order." (Emphasis added.)
"Refuse" is not defined in the statute, however, when read as a whole K.S.A. 1997 Supp. 65-171d(e) appears to be directed at pollution from oil and gas activities. Further, the state confined animal feeding operation agricultural waste program regulates animal wastes as sewage. K.S.A. 1997 Supp. 65-164(b) defines "sewage" as:
 "[A]ny substance that contains any of the waste products or excrementitious or other discharges from the bodies of human beings or animals, or chemical or other wastes from domestic, manufacturing or other forms of industry."
Even if animal wastes were considered "refuse" under K.S.A. 1997 Supp.65-171d (e), the Secretary has discretion in determining whether such refuse is causing or is likely to cause pollution. If the Secretary exercises that discretion and finds that the refuse is causing or likely to cause pollution of soil or water, the Secretary shall issue an order prohibiting such surface pond.
Your next question is what agency has either the authority or duty to act, and what action may or must be taken when evidence arises that there is contamination of soil or water caused by a confined animal feeding operation. The Secretary of KDHE is required to investigate a public water supply system whenever a complaint is made to the Secretary by any city, local health officer, or county board of health concerning the sanitary quality of any water supplied to the public, and the Secretary may investigate a public water supply system if the Secretary has reason to believe that the system is being operated in violation of an applicable state law or rule and regulation of the Secretary or that the water is polluted. K.S.A. 1997 Supp. 65-163(b)(1). Likewise, the Secretary is required to investigate any complaint by any city, local health officer, or county board of health of pollution of any waters of the State, and the Secretary may instigate an investigation of any waters of the State that the Secretary has reason to believe are being polluted. K.S.A. 1997 Supp. 65-164(c). If the Secretary finds upon investigation that the waters of the State have been or are being polluted in a manner prejudicial to the health of inhabitants of the State, the Secretary may order that the pollution cease and that steps be taken to prevent future pollution. K.S.A. 1997 Supp. 65-164(d). K.S.A.65-170 requires the Director of the Division of Environment of KDHE to investigate and report on all matters concerning water pollution that come before the Secretary and to make recommendations in relation thereto to the Secretary. The statute also provides that suits under the provisions of K.S.A. 65-161 to 65-170 be brought by the Attorney General.
Upon written order of the Director of the Division of Environment that a violation of any sewage discharge permit, regulation or order of the Secretary has occurred, the Director may impose a civil penalty in an amount of up to $10,000 for every violation. K.S.A. 65-170d. K.S.A.65-170e provides that upon the request of the Secretary, the Attorney General may bring an action to recover penalties or damages imposed by the Director.
K.S.A. 65-171b requires the Attorney General, on presentation by the Secretary "of evidence of abatable pollution of the surface waters detrimental to the animal or aquatic life in the state, to take such action as may be necessary to secure the abatement of such pollution." K.S.A. 65-171v authorizes the Secretary to enter into an agreement with a person who has discharged pollutants into the water or soil to clean up the pollution using funds from the State's pollutant discharge cleanup fund. If the person who discharged the pollutants fails to repay the pollutant discharge cleanup fund, the payment is recoverable in an action brought by the Attorney General. K.S.A. 65-171v.
In addition to the remedies under the Water Supply and Sewage Act, K.S.A. 65-161 et seq., the Secretary and county boards of health are authorized "to examine all nuisances, sources of filth and causes of sickness that in their opinion may be injurious to the health of the inhabitants within any county and to order removal of the nuisance." K.S.A. 65-159. The statute also provides for a fine, upon conviction, for failure to comply with such order. K.S.A. 65-160 imposes a duty on the county attorney to prosecute any person who fails to remove a nuisance under K.S.A. 65-159. Whether contamination of soil or water caused by a confined animal feeding operation constitutes a nuisance would depend on the specific fact situation.
Your next question is "[i]f a confined animal feeding facility is discharging in contravention to its NPDES permit, do officials with the KDHE have an obligation to apply the provisions of the Clean Water Act, particularly with regard to the delegation agreement between KDHE and the EPA?" We are unable to respond to the portion of this question concerning terms of the delegation agreement between KDHE and the EPA because that agreement is not before us. Because KDHE has an approved state NPDES program, it can enforce both federal and State requirements of NPDES permits. In State of California v. Department of Navy,631 F. Supp. 584, 586 (N.D.Cal. 1986), the Court explained the relationship between states and the EPA for purposes of administering and enforcing the Clean Water Act as follows:
 "The Act creates a cooperative federal-state scheme for the control of water pollution,' Shell Oil Co. v. Train, 585 F.2d 408, 409 (9th Cir. 1978), including the issuance and enforcement of discharge permits. Although the Administrator [of EPA] has initial authority to issue permits, the Act provides that each state may establish and administer its own permit program. 33 U.S.C. § 1342 (a), (b). The Administrator must approve a state program unless he or she determines that the program does not provide the state with adequate authority' to enforce the Act. 33 U.S.C. § 1342 (b).
 "Once a state program is approved, the Administrator must suspend the issuance of' any federal permit covering the navigable waters subject to the state program. 33 U.S.C. § 1342 (c) (1). Although enforcement authority then rests primarily with the state, the Administrator retains certain oversight authority over the state program. The Administrator may veto particular permits issued by the state, and may withdraw approval of the entire state program if he or she determines that the program is not being administered in accordance with the requirements of Act. 33 U.S.C. § 1342 (c) (3), (d) (2). Furthermore, if the state fails to take appropriate enforcement action' against a polluter who violates the state-issued permit, the Administrator must either issue an order requiring compliance with the permit or bring a civil action against the polluter. 33 U.S.C. § 1319 (a) (1). As the Ninth Circuit has noted, however, [d]espite this residual federal supervisory responsibility the federal-state relationship established under 33 U.S.C. § 1342 is "a system for the mandatory approval of a conforming State program and the consequent suspension of the federal program [which] creates a separate and independent State authority to administer the NPDES pollution controls.'" Shell Oil, 585 F.2d at 410, quoting Mianus River Preservation Committee v. Administrator, EPA, 541 F.2d 899, 905 (2nd Cir. 1976).
 Thus, although the Act grants the Administrator the authority the first instance to issue NPDES permits, Congress clearly intended that the states would eventually assume the major role in the operation of the NPDES program.' Shell Oil, 585 F.2d at 410."
When the provisions of an NPDES permit are violated, KDHE must exercise the remedies set forth in the Kansas NPDES permit program approved by EPA under 33 U.S.C. § 1342.
Your final question is whether the sewage seeping from wastewater lagoons of confined animal feeding operations meets the definition of "solid waste" in the Solid Waste Disposal Act, 42 U.S.C. § 6901 et seq. The federal Solid Waste Disposal Act defines "solid waste" as:
 "[A]ny garbage, refuse, sludge from a waste treatment plant, water supply treatment plant, or air pollution control facility and other discarded material, including solid, liquid, semisolid, or contained gaseous material resulting from industrial, commercial, mining, and agricultural operations, and from community activities. . . ." 42 U.S.C. § 6903
(27).
It would appear that sewage seeping from wastewater lagoons of confined animal feeding operations falls within the definition of "solid waste." However, the Solid Waste Disposal Act also states:
 "(a) Nothing in this Act [42 U.S.C.S §§ 6901 et seq.] shall be construed to apply to (or authorize any State, interstate, or local authority to regulate) any activity or substance which is subject to the Federal Water Pollution Control Act (33 U.S.C. § 1151 and following), . . . except to the extent that such application is not inconsistent with the requirements of such Act.
 "(b) (1) The Administrator [of EPA] shall integrate all provisions of this Act [41 U.S.C.S §§ 6901 et seq.] for purposes of administration and enforcement and shall avoid duplication, to the maximum extent practicable, with the appropriate provisions of the . . . Federal Water Pollution Control Act . . . and such other Acts of Congress as grant regulatory authority to the Administrator. Such integration shall be effected only to the extent that it can be done in a manner consistent with the goals and policies expressed in this Act [42 U.S.C. § 6901 et seq.] and in the other acts referred to in this subsection." 42 U.S.C. § 6905(a), (b)(1).
In considering the issue of whether certain actions were controlled by the federal Solid Waste Disposal Act or another act administered by the EPA, one Court explained that Section 6905 "creates no rights in defendants to resist regulation; rather it constitutes an exhortation to the EPA to avoid unnecessary and overlapping regulation. Thus, the decision of when to regulate and under which statutes to regulate is left to the EPA's discretion." U.S. v. Vineland Chemical Co., Inc.,692 F. Supp. 415, 420 (D.N.J. 1988).
Nevertheless, wastewater treatment lagoons of confined animal feeding operations operating under an NPDES permit are clearly precluded from regulation under the federal Solid Waste Disposal Act if such regulation is inconsistent with the requirements of the Federal Water Pollution Control Act.
In conclusion, the State of Kansas enforces both federal and State requirements of NPDES permits and exercises the remedies for permit violations set forth in the State program approved by the EPA. Wastewater treatment lagoons of confined animal feeding operations operating under an NPDES permit are precluded from regulation under the federal Solid Waste Disposal Act to the extent such regulation is inconsistent with the requirements of the Federal Water Pollution Control Act. The Kansas Legislature would need to enact a statute in order to require KDHE to conduct certain tests on wastewater lagoons of privately-owned confined animal feeding operations. State and county officials have certain statutory duties and powers as discussed above with respect to the contamination of soil or water caused by a confined animal feeding operation.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Donna M. Voth Assistant Attorney General
CJS:JLM:DMV:jm