COMMONWEALTH OF
MASSACHUSETTS,
Plaintiff-Appellant,

v.

UNITED STATES VETERANS ADMIN-
ISTRATION, Defendant-Appellee.

No. 76–1090.

United States Court of Appeals,
First Circuit.

Heard May 4, 1976.

Decided Aug. 26, 1976.

Charles Corkin, II, Chief, Environmental Protection Division, Dept. of the Atty. Gen., Boston, Mass., with whom Anton T. Moehrke, Asst. Atty. Gen., Environmental Protection Division, Boston, Mass., was on brief, for plaintiff-appellant.

Neil T. Proto, Atty., Dept. of Justice, with whom Peter R. Taft, Asst. Atty. Gen., Washington, D. C., James N. Gabriel, U. S. Atty., William A. Brown, Asst. U. S. Atty., Boston, Mass., Jacques B. Gelin, and Douglas K. Miller, Attys., Dept. of Justice, Washington, D. C., were on brief, for defendant-appellee.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

COFFIN, Chief Judge.

This case involves the jurisdiction of federal district courts over suits alleging violations of the Federal Water Pollution Control Act, as amended, 33 U.S.C. § 1251 *et seq.* (FWPCA). The Commonwealth of Massachusetts filed a complaint in the district court for the District of Massachusetts alleging that the Veterans Administration Hospital located in Bedford, Massachusetts, had violated the conditions of its National Pollution Discharge Elimination System (NPDES) permit, 33 U.S.C. § 1342, issued in March, 1975. That permit allowed the continued discharge of effluents for a limited period into Potash Brook, a tributary of the Shawsheen River, a navigable body of water in the Commonwealth. It also in-

cluded a timetable for the hospital's planned tie-in to the municipal sewage system of the town of Bedford. The Veterans Administration concedes that the hospital failed to comply with the deadlines imposed for submission of final plans for the sewer "tie-in" and, therefore, technically violated the conditions of the permit.

On June 12, 1975, the Attorney General of Massachusetts mailed to the VA and the EPA a notice of intent to file suit against the hospital for violation of the conditions of the NPDES permit. On July 22, 1975, the Commonwealth filed its complaint in this case, invoking jurisdiction under § 505(a) of the FWPCA, 33 U.S.C. § 1365(a), praying that the district court assess a civil penalty of $10,000 per day under § 309(d) of the Act, 33 U.S.C. § 1319(d), and seeking such other relief as the court might deem just. As only forty days had elapsed between the notice of intent and the commencement of this action, the district court dismissed for lack of jurisdiction. 33 U.S.C. § 1365(b).

■ Section 505(a) provides both a right of action, and relaxed jurisdictional requirements for citizens' suits seeking to enforce specified provisions of the FWPCA.[1] The section, however, imposes a separate limitation, embodied in § 505(b)(1), 33 U.S.C. § 1365(b)(1), which provides that "no action may be commenced—(1) under [505(a)(1)] (A) prior to sixty days after the plaintiff has given notice of the alleged violation . . .." Because the instant suit was filed prematurely, and has not been cured by a supplemental complaint, *Montgomery Environmental Coalition v.*

*Fri,* 366 F.Supp. 261 (D.D.C.1973), it failed to meet the statutory criteria for federal court jurisdiction under § 505(a). *City of Highland Park v. Train,* 519 F.2d 681 (7th Cir. 1975) (air);[2] *NRDC v. Train,* 166 U.S. App.D.C. 312, 510 F.2d 692 (1974) (water); *Conservation Soc'y of Southern Vermont v. Sec'y of Transportation,* 508 F.2d 927 (2d Cir. 1974) (water); *Friends of the Earth v. Carey,* 401 F.Supp. 1386 (S.D.N.Y.1975) (air); *West Penn Power Co. v. Train,* 378 F.Supp. 941 (W.D.Pa.1974) (air); *Pinkney v. Ohio Environmental Protection Agency,* 375 F.Supp. 305 (N.D. Ohio 1974) (air).

On appeal, the Commonwealth attempts to salvage § 505(a) jurisdiction by claiming "substantial compliance" with the "spirit" of the notice requirement of § 505(b). The Commonwealth's argument is that, since no amount of administrative action during the post notice period could cure the past violation of the permit conditions, no purpose would be served by deferring recourse to the courts for the full statutory period. The citizens' suit provisions under the FWPCA were designed to supplement and expedite administrative action to abate violations of the Act, *see* S. Rep. No. 92–414, 92nd Cong., 1st Sess. in 2 U.S.Code Cong. & Ad.News 3668, 3745–46 (1972). Recourse to the courts is appropriate only when the administrative action taken is less than adequate. *Id.* Therefore, even conceding that no administrative action could cure the failure of the VA to meet past deadlines for planning and construction of the sewer tie-in, increased administrative attention could still expedite the completion of the project. A citizen's suit under § 505(a) could do little more. Accordingly, we see no prima facie

---

1. Section 505(a)(1) authorizes "any citizen . . . [to] commence a civil action . . . against any person (including (i) the United States . . .) who is alleged to be in violation of (A) an effluent standard or limitation under this Chapter . . .."

Under § 502(5) of the FWPCA, 33 U.S.C. § 1362(5), a state is a "person" within the meaning of § 505(g), 33 U.S.C. § 1365(g), which defines a "citizen" as a "person . . . having an interest which is or may be adversely affected."

Section 505(f)(6), 33 U.S.C. § 1365(f)(6) provides that "the term 'effluent standard or limi-

tation under this chapter' means . . . (6) a permit or condition thereof issued under section 402 of this title [33 U.S.C. § 1342]."

Therefore, § 505(a)(1) authorized the Commonwealth of Massachusetts, as a citizen, to bring a civil action against an agency of the United States for violation of the conditions of a NPDES permit.

2. Section 505 of the FWPCA was modeled on § 304 of the Clean Air Act Amendments of 1970, 42 U.S.C. § 1857h–2. Cases interpreting § 505 will be denominated (water); those interpreting § 304 (air).

claim of futility sufficient to raise the issue of "constructive compliance" with the § 505(b) notice requirement. *See NRDC v. Callaway,* 524 F.2d 79, 84 n. 4 (2d Cir. 1975). The district court properly found no jurisdiction under § 505(a) of the FWPCA.

In the alternative, the Commonwealth asserts that the district court had jurisdiction over the complaint under 28 U.S.C. § 1331(a). An examination of the entire complaint, it claims, reveals a proper basis for assuming jurisdiction even though the jurisdiction expressly asserted was improper. 5 C. Wright & A. Miller, Federal Practice & Procedure § 1206. Jurisdiction may be noticed at any time, even in the court of appeals. *Eisler v. Stritzler,* 535 F.2d 148 (1st Cir. 1976). The Commonwealth did not amend its complaint to allege § 1331(a) jurisdiction. But, its contentions were apparently raised below, and the parties have briefed and argued the relevant issues here. *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). While it is better practice to amend the complaint when alternative bases of jurisdiction are discovered, there is no question but that the issue of § 1331(a) jurisdiction is properly before this court.

The Commonwealth's theory proceeds as follows: the complaint states a cause of action sounding in the federal common law of nuisance which supports general federal question jurisdiction under 28 U.S.C. § 1331(a).[3] *See Illinois v. City of Milwaukee,* 406 U.S. 74, 92 S.Ct. 1385, 31 L.Ed.2d 712 (1972). This cause of action can be constructed from the allegations charging the VA with emitting effluents while violating the conditions of its NDPES permit. These allegations are sufficient to establish "unreasonable interference", Restatement (second) of Torts (Tent. draft No. 17, 1971) § 821.B(1), with a right common to the public of the Commonwealth. Thus, the complaint can stand independent of both the right of action and the jurisdictional grant of § 505(a), and is not barred by the failure to comply with the waiting period imposed by § 505(b).

There are several significant legal problems with the Commonwealth's theory—any one of which might be dispositive. First, the allegations of nuisance embodied in the complaint are founded on a violation of the FWPCA, and not upon unreasonable damage to the resources of the Commonwealth independent of the Act. There is, at present, a significant debate whether causes of action dependent upon violations of the FWPCA can be asserted under federal question jurisdiction, 28 U.S.C. § 1331(a), rather than under grants of jurisdiction expressly provided in the Act. *Compare City of Highland Park v. Train, supra; Pinkney v. Ohio Environmental Protection Agency, supra with NRDC v. Callaway, supra; NRDC v. Train, supra; Conservation Soc'y of Southern Vermont v. Sec'y of Transportation, supra.*[4] Second, the current scope

---

**3.** States may sue the United States in district courts, 28 U.S.C. § 1251(b)(2); *see Illinois. v. City of Milwaukee, supra.* The Commonwealth claims that the $10,000 jurisdictional amount is satisfied because the matter in controversy concerns pollution of interstate waters. *Id.* at 98. Since the pecuniary burden on the VA would probably be in excess of $10,000 should the Commonwealth prevail, we think that the jurisdictional amount requirement is satisfied. *See Williams v. Kleppe,* 539 F.2d 803, n.1 (1st Cir. July 30, 1976).

**4.** Section 505(e) of the FWPCA states "Nothing in this section shall restrict any right which any person . . . may have under any statute or common law to seek enforcement of any effluent standard or limitation or to seek any other relief . . . ." 33 U.S.C. § 1365(e).

The seventh circuit, and several lower courts, interpret this provision to save only causes of action which exist independent of the Clean Air Act or FWPCA. *City of Highland Park v. Train, supra; Pinkney v. Ohio Environmental Protection Agency, supra.* For example, the fourth circuit has stated that § 505(e) "saves" a cause of action arising under state nuisance law. *Committee for the Consideration of the Jones Falls Sewage System v. Train,* 539 F.2d 1006, at 1009–1010 (4th Cir. 1976).

The second and District of Columbia circuits take the position that § 505(e) "saves" suits alleging violations of the FWPCA brought under alternative sources of federal court jurisdiction, if the plaintiff can present a justiciable controversy and can otherwise comply with jurisdictional prerequisites. *NRDC v. Callaway, supra; NRDC v. Train, supra; Conserva-*

and content of the federal common law of nuisance is unclear. This area of federal common law was originally recognized to fill a void in the law applicable to suits seeking abatement of pollution originating within the domain of one state sovereign and exerting adverse effects in the domain of another, *see Illinois v. City of Milwaukee, supra; Texas v. Pankey,* 441 F.2d 236 (10th Cir. 1971). Whether the common law so recognized extends to suits involving pollution originating within the territorial jurisdiction of the plaintiff sovereign is doubtful. *See Committee for the Consideration of the Jones Falls Sewage System v. Train,* 539 F.2d 1006 (4th Cir. 1976), *aff'g,* 375 F.Supp. 1148 (D.Md.1974). *But see Stream Pollution Control Board of Indiana v. U. S. Steel Corp.,* 512 F.2d 1036 (7th Cir. 1975); *United States v. Ira S. Bushey & Sons, Inc.,* 363 F.Supp. 110 (D.Vt.1973). Furthermore, the 1972 amendments to the FWPCA, *see* 33 U.S.C. § 1365(h), may have preempted portions of the federal common law of nuisance. *See Illinois v. City of Milwaukee, supra* at 107, 92 S.Ct. 1385. *But see United States v. Ira S. Bushey & Sons, Inc., supra.* We do not address these difficult issues, however, because there is a legal bar which clearly precludes the maintenance of this suit under the Commonwealth's theory: sovereign immunity.

■ The Veterans Administration is an agency of the United States, 38 U.S.C. § 201, and this action seeks relief, in the form of monetary penalties or court ordered action, from or by the VA. The suit, therefore, is one against the federal sovereign, *Larson v. Domestic & Foreign Corp.,* 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949), and cannot be maintained, even by a state, without an express waiver, or consent, by Congress. *Minnesota v. United States,* 305 U.S. 382, 59 S.Ct. 292, 83 L.Ed. 235 (1939).

The Commonwealth argues that Congress has given this consent. It claims that the

waiver of immunity in § 505(a) of the FWPCA, coupled with the policy provision of § 313 of the FWPCA, 33 U.S.C. § 1323, subjecting federal installations to the Act, establishes a congressional waiver of immunity to the non-statutory, federal common law suit. It is axiomatic, however, that waivers of sovereign immunity by Congress are not to be construed expansively. *United States v. King,* 395 U.S. 1, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969); *United States v. Sherwood,* 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). Both a literal reading of the statute, and the legislative history, S. Rep. No. 92–414, *supra* at 3746, establish that Congress consented only to suits brought under the provisions of § 505(a). As this statutory right of action is unavailable to the Commonwealth, its suit must fail.

*The judgment of the District Court is affirmed.*[5]

---

*tion Soc'y of Southern Vermont v. Sec'y of Transportation, supra.* The Commonwealth's federal common law of nuisance § 1331(a) theory squarely presents this controversial issue.

**5.** The Commonwealth has petitioned this court to strike portions of the VA appendix on the grounds that the various documents were not part of the record in the district court. This motion is granted. F.R.A.P. 10.