# United States Court of Appeals
## For the First Circuit

No. 09-1943

DELIA ESQUILÍN-MENDOZA; DAYMAR VEGA-ROSA;
MICHAEL TORRES-ROSARIO; ROBERTO PACHECO-ROSARIO,

Plaintiffs, Appellants,

v.

DON KING PRODUCTIONS, INC.,

Defendant, Appellee.

———————

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Raymond L. Acosta, U.S. District Judge]

———————

Before

Torruella, Leval,[*] and Lipez, Circuit Judges.

———————

Louis A. De Mier Le-Blanc for appellants.
Ricardo L. Díaz Soto for appellee.

———————

February 18, 2011

———————

[*] Of the Second Circuit, sitting by designation.

**LEVAL**, <u>Circuit Judge</u>. Plaintiff Delia Esquilín-Mendoza ("Esquilín") appeals from the judgment of the United States District Court for the District of Puerto Rico, dismissing her tort claim against Don King Productions, Inc. ("DKP"). The suit, brought in federal court by virtue of diversity of citizenship, 28 U.S.C. § 1332, alleged that DKP acted negligently in seizing Plaintiff's automobile in execution of a court judgment notwithstanding a defect in the execution warrant, and in failing to return the vehicle promptly when the court vacated the warrant. Plaintiff claimed damages of approximately $1 million for emotional distress and deprivation of the use of the automobile. The district court dismissed the action and entered judgment for the Defendant, based on its finding that Plaintiff had failed to establish a causal connection between the Defendant's actions and her injury. We hereby direct that the judgment be vacated and the suit dismissed for lack of federal jurisdiction under § 1332 because it is a legal certainty that the "matter in controversy [does not] exceed[] the sum or value of $75,000." 28 U.S.C. § 1332.

## BACKGROUND

The pertinent facts of this case consist primarily of the facts of the prior lawsuit brought by DKP. DKP was the producer of a closed-circuit telecast transmission of a championship boxing match on March 1, 2003, between Roy Jones, Jr. and John Ruiz. DKP distributed this televised transmission to subscribing

establishments in Puerto Rico.  On or about August 13, 2004, DKP brought suit in the United States District Court for the District of Puerto Rico against numerous restaurants, bars, and other like establishments in Puerto Rico, and their owners, alleging that they had violated Section 705 of the Communications Act of 1934, 47 U.S.C. § 605, by intercepting its closed-circuit transmission and exhibiting it to their patrons.  DKP sought damages against each defendant under the statute's provision for a private cause of action by "any person with proprietary rights in the intercepted communication." 47 U.S.C. § 605(d)(6); § 605(e)(3)(A).  Among the numerous defendants named in DKP's suit were:

> 30. Defendants Alberto López, his wife Delia López,
> and the conjugal partnership which they constitute
> . . . doing business as DELIA'S TACOS.

Upon the failure of those defendants to answer the complaint, the court noted the default and granted summary judgment to DKP, awarding damages of $12,000.  The order of judgment named the defendants as "Alberto López, individually and in representation of the conjugal partnership between him and his wife Delia López, a.k.a. Delía Esquilín d/b/a Delia's Tacos."  Upon the defendants' failure to pay the judgment, the court issued a writ of execution, pursuant to which the United States Marshal seized the Plaintiff's 1995 Toyota 4 Runner sport utility vehicle.  The writ, consistent with DKP's complaint, named "Alberto López, his wife Delia López,

and the conjugal partnership which they constitute . . . doing business as DELIA'S TACOS" as the defendants against whom judgment had been entered.

Esquilín then moved to set aside the judgment and the writ of execution. The basis of the motions was essentially that Delia, the owner of Delia's Tacos, is not married to Alberto López, so that her surname is not López, as specified in DKP's complaint, but Esquilín, and that Alberto López is not an owner but an employee of Delia's Tacos. DKP did not contest these motions. The judgment and writ of execution were therefore vacated, and on September 11, 2006, the court directed DKP to return the vehicle by September 25, 2006. For reasons which are disputed by the parties (each side accusing the other of failure to cooperate), the vehicle was not restored to Delia Esquilín's possession until October 2007.

Esquilín then brought this action against DKP asserting gross negligence and illegal embargo. She claimed damages of approximately one million dollars for deprivation of the vehicle, extreme mental anguish and depression resulting from public humiliation, injury to her public dignity, and stress, which exacerbated her heart problems.

The District Court granted DKP's motion to dismiss Esquilín's suit, ruling that she failed to establish a causal connection between DKP's actions and her alleged injuries, and that her own acts and omissions contributed to her loss.

**DISCUSSION**

For cases brought in the federal courts on the basis of diversity of jurisdiction, § 1332 of the Judicial Code of the United States provides that jurisdiction lies only "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs." 28 U.S.C. § 1332. Although no party has questioned whether the district court had jurisdiction to rule in this case, it is well established that the courts have a duty to ensure that they are not called upon to adjudicate cases which in fact fall outside the jurisdiction conferred by Congress. Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006).

In St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 288-89 (1938), the Supreme Court reviewed a case in which the Court of Appeals had directed the remand to the state court of a suit, which had been brought by the plaintiff in state court and had been then removed by the defendant to federal court on the basis of diversity of citizenship. The complaint asserted damages of $4,000, which exceeded the then-current threshold requirement of $3,000. The district court had found in the plaintiff's favor on the merits and awarded damages in the amount of $1,162.98. The Court of Appeals directed that the judgment be vacated and the case remanded to the state court on the ground that the plaintiff's claim did not equal the amount necessary to give the District Court jurisdiction. Id. at 285. The Supreme Court reversed the remand

to state court and reinstated the judgment. The Supreme Court explained that the court's eventual determination that the damages were less than the jurisdictional amount did not negate the propriety of the plaintiff's original claim for an amount that exceeded the jurisdictional minimum. The Supreme Court described the test for determining satisfaction of the jurisdictional amount as follows:

> The intent of Congress drastically to restrict federal jurisdiction in controversies between citizens of different states has always been rigorously enforced by the courts. The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal. The inability of plaintiff to recover an amount adequate to give the court jurisdiction does not show his bad faith or oust the jurisdiction. Nor does the fact that the complaint discloses the existence of a valid defense to the claim. But if, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction, the suit will be dismissed.

Id. at 288-89.

This discussion in St. Paul is confusing. On the one hand, it states, "[T]he sum claimed by the plaintiff controls if the claim is apparently made in good faith. . . . The inability of plaintiff to recover an amount adequate to give the court jurisdiction does

not show his bad faith or oust the jurisdiction." Id. at 289. On the other hand, another part of the Court's explanation states that, where it appears "to *a legal certainty* that the claim is really for less than the jurisdictional amount," dismissal is required. Id. (emphasis added). "[I]f . . . from the proofs, the court is satisfied to a [legal] certainty that the plaintiff never was entitled to recover that amount, and that his claim was therefore colorable[1] for the purpose of conferring jurisdiction, the suit will be dismissed." Id. The latter passage appears to render irrelevant whether the plaintiff exercised good faith in pleading entitlement to recover the jurisdictional amount when it is clear "to a legal certainty" that he cannot recover a sufficient amount. Id.

Our decisions have construed the Supreme Court's summary to mean that "legal certainty that the claim is really for less than the jurisdictional amount," id., trumps the plaintiff's good faith

---

[1] Some further confusion arises from the Supreme Court's use of the term "colorable" where the term "not colorable" seems more appropriate. In the legal context, the word is most commonly used to mean having apparent validity, see Bryan A. Garner, A Dictionary of Modern Legal Usage 124 (1st ed. 1987) ("used in the law in the sense 'having at least a prima facie aspect of justice or validity'"), which does not seem compatible with the Court's explanation. It appears, however, that "colorable" also has a secondary meaning which is very nearly the contrary of the first. The Merriam-Webster Third New International Dictionary, for example, gives as the first and second meanings, "1. Seemingly valid and genuine, having an appearance of truth, right, or justice, plausible" and "2. FEIGNED, FICTITIOUS, COUNTERFEIT." Merriam-Webster Third New International Dictionary 449. The Supreme Court apparently had in mind the latter sense.

in claiming for a larger amount.  See Barrett v. Lombardi, 239 F.3d 23, 30 (1st Cir. 2001) ("[T]he amount specified by the plaintiff controls, as long as that amount is asserted in good faith.  Hence, a court can dismiss an action for insufficiency of the amount in controversy only when, 'from the face of the pleadings, it is apparent, to a legal certainty, . . . that the plaintiff never was entitled to recover' a sum equal to, or in excess of, the jurisdictional minimum." (citations omitted) (quoting St. Paul, 303 U.S. at 289)); see also Spielman v. Genzyme Corp., 251 F.3d 1, 5 (1st Cir. 2001); Dep't of Recreation & Sports v. World Boxing Ass'n, 942 F.2d 84, 88 (1st Cir. 1991).

Saying approximately the same thing in slightly different terms in other cases, we construed the Supreme Court's language in St. Paul to mean that the plaintiff's "good faith" in pleading the jurisdictional amount includes an element of "objective good faith": jurisdiction is defeated notwithstanding the plaintiff's good faith in claiming for the jurisdictional amount if one familiar with the applicable law could not reasonably have concluded that the claim was worth the jurisdictional amount. Coventry Sewage Assoc. v. Dworkin Realty Co., 71 F.3d 1, 4-8 (1st Cir. 1995); Jimenez Puig v. Avis Rent-A-Car System, 574 F.2d 37, 40 (1st Cir. 1978).

The present case seems to us to fall squarely within the contested territory between the divergent prongs of the Supreme

Court's explanation. Esquilín pleaded that, as the result of DKP's improper seizure of her car and its failure to return it promptly when the judgment against her and the execution warrant were vacated, she suffered not only deprivation of use of the vehicle but also serious emotional injury resulting from her humiliation and anxiety. We have no reason to believe that Esquilín possesses any sophisticated understanding of legal entitlements and thus have no reason to question her good faith in asserting entitlement to damages for these injuries. If her good faith in making the claim were controlling, federal jurisdiction would lie because her complaint pleaded injury far beyond the requisite jurisdictional amount.

On the other hand, examination of her claims and concessions makes clear that she has no legal entitlement to recover damages for any emotional or other injury caused by DKP's execution of its judgment against the vehicle. The only defect identified by Esquilín in the proceedings that led to the seizure of the vehicle was that, because of DKP's mistaken belief that she was married to her employee, López, her surname was written incorrectly in the operative documents. DKP's complaint was directed against "Alberto López, his wife Delia López, and the conjugal partnership which they constitute . . . doing business as DELIA'S TACOS." The subject of the complaint was the unauthorized interception and exhibition of DKP's transmission at Delia's Tacos. The plaintiff

Delia Esquilín acknowledges that she is the owner of Delia's Tacos, and has never denied that DKP's closed-circuit transmission was exhibited at Delia's Tacos without DKP's authorization. Her allegations therefore show no impropriety in DKP's having brought suit and obtained judgment against her, or its subsequent seizure of her car pursuant to a warrant of execution when she failed to pay the judgment. The fact that DKP erroneously believed that the Delia who owned Delia's Tacos was married to López and shared his surname, and that DKP made out the court documents naming her in that manner, in no way shows any impropriety in the seizure of her car, given her admissions that she was the owner of Delia's Tacos, which illegally intercepted DKP's transmission. DKP's suit was thus properly brought against her; judgment and execution therefore were properly entered notwithstanding the mistake as to her surname.

While Esquilín claims she was not served with process in DKP's suit, which resulted in the seizure of the car, it is clear on careful reading of her allegations that she is not denying that the summons and complaint were served on her. She is rather contending that the service of the complaint should be deemed ineffective and void because it named her by the wrong name. Whatever merit there may be to such a contention where a defendant reasonably believes that the complaint served on her was not properly directed against her because it named a different person, that is not the

- 10 -

circumstance here. It was unmistakably clear from the face of DKP's complaint that it was directed against Delia, the owner of Delia's Tacos, and that it related to the unauthorized interception and exhibition of the fight telecast at Delia's Tacos. As Delia Esquilín admits that she is Delia, the owner of Delia's Tacos, and did not deny that DKP's telecast was exhibited at Delia's Tacos, she could not have had any reasonable doubt that the complaint served on her was intended for her and sufficiently identified her.

Therefore, notwithstanding her presumable good faith in making the claim, we find it clear to a legal certainty that the plaintiff Delia Esquilín has no legal entitlement to damages for emotional injury resulting from the judgment against her and the consequent seizure of her car. These damage claims are all predicated on the theory that DKP had no cause for the judgment that resulted in the seizure of her car. But, notwithstanding its insignificant mistake as to her marital status, DKP was entitled to judgment against Delia, the owner of Delia's Restaurant, and to seize her car in its execution.

Esquilín's only plausible claim for damages relates to the delay in returning the vehicle, which DKP and Esquilín each claim was due to the fault of the other. Assuming the validity of Esquilín's claim that DKP was at fault in failing to return the car to her promptly following the court's order, the only harm she suffered from that wrong was the deprivation of the use of a

vehicle for approximately thirteen months.  The rental value of an equivalent car for the period of allegedly wrongful deprivation constitutes the only damages to which she might have a plausible entitlement.

The cost of renting a vehicle equivalent to hers for this 13-month period could not have approached $75,000.  By Esquilín's own admission, the rental of an equivalent vehicle would not have exceeded $22,500.  One "familiar with the applicable law . . . could [not] objectively have . . . viewed [the claim] as worth [the jurisdictional minimum]."  Coventry, 71 F.3d at 6.  Because it is clear to a legal certainty that Esquilín has no claim for damages remotely approaching $75,000, we dismiss the case for want of jurisdiction.

**CONCLUSION**

The District Court's judgment is hereby vacated and the suit is dismissed for lack of federal jurisdiction.