# United States Court of Appeals
## For the First Circuit

No. 13-1080

CE DESIGN LTD.,

Plaintiff-Appellant,

v.

AMERICAN ECONOMY INSURANCE COMPANY,

Defendant-Appellee,

and

ERNIDA, LLC,

Defendant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. F. Dennis Saylor IV, U.S. District Judge]

Before

Howard, Stahl, and Thompson,
Circuit Judges.

David M. Oppenheim, with whom Brian J. Wanca, Jeffrey A. Berman, Anderson + Wanca, Alan L. Cantor and Swartz & Swartz, P.C. were on brief, for the appellant.

Myles W. McDonough, with whom Christopher M. Reilly, Ryan B. MacDonald and SLOANE AND WALSH, LLP were on brief, for the appellee.

June 19, 2014

THOMPSON, <u>Circuit Judge</u>.  This is an appeal from a dismissal of an action for declaratory judgment.  Because, as a threshold issue, we have an obligation to ascertain <u>sua sponte</u> the existence of federal subject-matter jurisdiction, we asked the parties for supplemental briefing on how (or whether) the plaintiff-appellant's claim in this action met the $75,000 amount-in-controversy requirement for diversity jurisdiction.  Finding federal jurisdiction wanting, we remand this case to the district court with instructions to dismiss.

## BACKGROUND

In 2008, plaintiff-appellant CE Design Ltd. ("CE") filed a class action suit in the Circuit Court of Cook County, Illinois, on behalf of itself and others similarly situated, against Ernida, LLC.  The complaint alleged violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/2, and common law conversion.  CE claimed that Ernida had faxed unsolicited advertisements to CE and "more than 39 other recipients," without first obtaining their permission.  CE sought damages, including statutory damages of $500 for each violation of the TCPA, as well as costs, and any further relief the court deemed just and proper.  The complaint specifically disclaimed any

individual recovery in excess of $75,000.[1] After being notified of this suit, Ernida's insurer, American Economy Insurance Company ("American"), took up Ernida's defense in Cook County, explicitly reserving its rights to withdraw from the defense and to deny coverage.

With the Cook County action still ongoing, CE then filed suit in federal court against American, seeking a declaratory judgment on American's duty to defend Ernida in the Cook County action and American's responsibility to indemnify and pay any judgment entered in that action against Ernida.[2] Ernida is also a named defendant in the federal suit. CE asserted diversity jurisdiction under 28 U.S.C. § 1332.

American moved to dismiss CE's federal action for lack of a justiciable controversy and for failure to state a claim on which relief could be granted; alternatively, it asked the court to exercise its discretion under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, and decline to enter declaratory relief. The district court granted American's motion, holding CE had not presented a justiciable controversy. Applying Illinois law, it

---

[1] CE's Cook County complaint specifically says "no federal question or claim is asserted and Plaintiffs' individual claims are worth less than $75,000.00, inclusive of all forms of damages and fees." It further states that "Plaintiff expressly disclaims any individual recovery in excess of $75,000.00, inclusive of all forms of damages and fees."

[2] CE also seeks an award of costs.

-3-

found CE did not have a cognizable injury for standing purposes because "an injured claimant generally has no direct rights against the insurer prior to a judgment of the tortfeasor's liability," and the Cook County court had yet to issue a judgment against Ernida.[3] This appeal followed.

Both parties filed appellate briefs, focusing on the issues addressed by the district court in its order granting American's motion to dismiss. However, in an extended footnote, American raised a jurisdictional amount challenge, questioning whether CE's claim met the amount-in-controversy requirement for diversity jurisdiction since CE had expressly waived any right to recover anything over $75,000 in its Cook County complaint. This jurisdictional challenge went unanswered in CE's reply brief. During oral argument, we asked CE's appellate counsel whether and how his client's claim reached the amount-in-controversy requirement of $75,000. Without a satisfactory answer, we ordered the parties to file supplemental briefs on the issue.

In its supplemental brief, CE maintains federal jurisdiction exists because the object of this litigation is to obtain indemnity coverage, and the pecuniary burden on the insurer (i.e., American's overall potential payout to all putative class

---

[3] The district court further stated that even if the jurisdictional and standing requirements had been met, it would have declined to issue declaratory judgment due to certain expressed prudential considerations.

-4-

members[4] in the Cook County action) exceeds the minimum jurisdictional amount. American now squarely contests subject-matter jurisdiction, arguing CE's claim does not meet the amount-in-controversy requirement because it waived all individual damages in excess of $75,000 in the Cook County complaint, and because it cannot aggregate its claim with the claims of other putative class members in the Cook County action to reach the required minimum.[5]

## DISCUSSION

As a court of limited jurisdiction, we have "a responsibility to police the border of federal jurisdiction." Spielman v. Genzyme Corp., 251 F.3d 1, 4 (1st Cir. 2001). Even where "no party has questioned whether the district court had jurisdiction to rule in [a] case, it is well established that [we] have a duty to ensure that [federal district courts] are not called upon to adjudicate cases which in fact fall outside the jurisdiction conferred by Congress." Esquilín-Mendoza v. Don King Prods., Inc., 638 F.3d 1, 3 (1st Cir. 2011).

---

[4] We refer to "putative class members" because we have no idea whether the plaintiff class in Cook County has been certified. All we know from CE's briefing is that a class action complaint and a motion for class certification have been filed with the Cook County court.

[5] American also contests subject-matter jurisdiction due to lack of complete diversity between CE and Ernida (CE is an Illinois corporation and Ernida is an Illinois limited liability company). Because we ultimately find CE's claim cannot meet the minimum amount required for diversity jurisdiction, there is no need to address whether complete diversity exists.

When an action is brought in federal court pursuant to diversity jurisdiction, jurisdiction lies only "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332. The burden is on the federal plaintiff to establish that the minimum amount in controversy has been met. Abdel-Aleem v. OPK Biotech LLC, 665 F.3d 38, 41 (1st Cir. 2012). A plaintiff's good faith allegation of damages meeting the required amount in controversy is usually enough. Id. And "[t]he inability of plaintiff to recover an amount adequate to give the court jurisdiction does not show his bad faith or oust the jurisdiction." Esquilín-Mendoza, 638 F.3d at 4 (quoting St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 289 (1938)). However, "where it appears 'to a legal certainty that the claim is really for less than the jurisdictional amount,' dismissal is required." Id. (quoting St. Paul Mercury Indem. Co., 303 U.S. at 289).

Amount in controversy is usually assessed from the viewpoint of the plaintiff. See, e.g., Miles v. Funk, 259 F. App'x 335, 337 (1st Cir. 2008) (per curiam) (unpublished) (finding only three plaintiffs were "involved in the litigation" when assessing the value of the matter in controversy); see also Richard C. Young & Co., Ltd. v. Leventhal, 389 F.3d 1, 3 (1st Cir. 2004) (considering the value of the object of the litigation in a case involving both declaratory and injunctive relief from the

-6-

plaintiff's perspective).  The amount in controversy in actions seeking declaratory relief "is the value of the right or the viability of the legal claim to be declared, such as a right to indemnification or a duty to defend."  14AA Charles Alan Wright et al., Federal Practice and Procedure § 3708 (4th ed.).  As a general rule, multiple plaintiffs cannot aggregate their separate individual claims to meet the jurisdictional amount threshold.  See Zahn v. Int'l Paper Co., 414 U.S. 291, 294-95 (1973), superseded by 28 U.S.C. § 1367 on other grounds, as stated in Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546 (2005).[6]  A limited exception to this rule exists where "several plaintiffs unite to enforce a single title or right, in which they have a common and undivided interest."  Id. at 294 (quoting Troy Bank of Troy, Indiana v. G.A. Whitehead & Co., 222 U.S. 39, 40-41 (1911)).  In that instance, "it is enough if their interests collectively equal the jurisdictional amount."  Id. (quoting Troy Bank, 222 U.S. at 41) (internal quotation mark omitted).  For this exception to apply, the interest must be both common and undivided.  See Everett v. Verizon Wireless, Inc., 460 F.3d 818, 824 (6th Cir. 2006) ("A common interest in a litigation recovery thus represents a

_____

[6] Zahn held that each plaintiff in a multi-plaintiff action must individually satisfy the amount-in-controversy requirement. 414 U.S. at 301.  The Supreme Court in Exxon held Zahn had been overruled by § 1367 "by its plain text" because § 1367 provided for supplemental jurisdiction over claims where some, but not all, of the plaintiffs in a diversity action had alleged a sufficient amount in controversy.  Exxon, 545 U.S. at 566-67.

necessary, but by itself insufficient, ground to qualify claims for aggregation."). Courts have found that individually cognizable and calculable claims do not fit the exception. See, e.g., Travelers Prop. Cas. v. Good, 689 F.3d 714, 720 (7th Cir. 2012) ("[W]here the plaintiffs' claims are 'cognizable, calculable, and correctable individually,' . . . they are clearly 'separate and distinct' and may not be aggregated to meet the amount in controversy." (citation omitted)).

We first questioned the amount in controversy in this case at oral argument with the anti-aggregation rule in mind. CE appeared to rely on the claims of the other putative class members in the Cook County action, presumably because its individual claim cannot reach $75,000. Again, CE had expressly waived any relief over $75,000 in the Cook County complaint.

As the party seeking to invoke jurisdiction, CE has the burden of showing it has met the amount-in-controversy requirement. See Spielman, 251 F.3d at 4. Recognizing the anti-aggregation rule would otherwise bar jurisdiction, CE makes two distinct arguments as to why this rule is inapplicable in this case. First, CE argues the "common and undivided interest" exception to this rule applies here. Second, CE argues we should not assess the value of the object of the litigation for our amount-in-controversy determination from the plaintiff's viewpoint (which would require the aggregation of its claims with those of the other putative

-8-

class members in the Cook County action), but rather from the defendant's perspective.  We are not persuaded by either argument.

As to the first argument, CE fails to show us how this case falls within the "common and undivided interest" exception. CE limits its exposition to the following:  "CE Design seeks to vindicate the class's common and undivided interest in obtaining an affirmative declaration of coverage, the value of which far exceeds the jurisdictional threshold."  Without more, we cannot do much. There is no explanation as to why this class shares a "common and undivided interest."  While each of the putative Cook County class members might be asserting a similar claim against Ernida in the underlying state court action, this alone does not make their interest undivided.  See Everett, 460 F.3d at 824.  Each putative class member allegedly suffered a separate and distinct violation of the TCPA, and the amount of money each may be entitled to receive (including statutory damages of $500 per violation) is readily discernible.

Furthermore, CE, which filed its complaint here in federal court as an individual plaintiff, fails to tell us how it can represent the entire Cook County class.[7]  At the risk of oversimplifying, generally, a plaintiff can only assert claims

---

[7] Unlike in its state court action, CE did not file this action on behalf of others similarly situated.  In its supplemental brief, CE affirms it does not seek class certification of its federal action.

premised on his or her own legal rights, not those of third parties (subject to some exceptions, of course). See Wilson v. HSBC Mortg. Servs., Inc., 744 F.3d 1, 8 (1st Cir. 2014) (discussing prudential concerns for standing). It is CE's burden to show why it can assert claims on behalf of the other putative class members, see id., and it has made no effort to do so. Merely citing to the underlying state court complaint, which does not tell us whether the class action has been certified or whether CE has been appointed class representative, is not enough. Accordingly, the "common and undivided interest" exception argument goes nowhere, and the general rule that CE cannot aggregate its claim with the claims of other putative Cook County class members to meet the jurisdictional amount threshold holds.

CE is now left with its defendant-viewpoint argument. But this too fails to make the grade. CE urges us to assess the amount in controversy in this case from American's perspective (i.e., the cost to American of the potential indemnity obligation to all the putative class members in the Cook County action). Although CE acknowledges the value of the object of the litigation "has historically been assessed from a plaintiff's perspective," it cites caselaw to suggest it is legally permissible to look at the amount in controversy from the defendant's perspective. CE, however, does not cite anything on-point, and fails to illustrate how the cited caselaw applies to this particular case.

From this circuit, CE references two footnotes in Williams v. Kleppe, 539 F.2d 803 (1st Cir. 1976), and in Massachusetts v. United States Veterans Administration, 541 F.2d 119 (1st Cir. 1976) -- particularly, footnote one in Williams[8] and footnote three in Massachusetts[9] -- claiming they "signal[] an openness to consider the 'defendant's viewpoint' in assessing the amount in controversy." CE maintains this is the appropriate case for us to finally employ this approach. But these footnotes, on their own, give us no reason to abandon our general plaintiff-perspective rule, and CE, which merely cites to and quotes them, provides us with no analysis as to why these two footnoted comments should persuade us to adopt something new here. It did so at its peril. We need not "bend over backwards to preserve [CE's] right to a federal forum." Travelers Indem. Co. v. Dingwell, 884 F.2d 629, 637 (1st Cir. 1989). But more importantly and viewed

---

[8] "The action was brought under 28 U.S.C. § 1331(a). The jurisdictional amount was alleged and has not been made an issue. Applying conventional analysis, we are unwilling to say on this record that the claimed interests of one or more plaintiffs, some being residents of the Seashore area, may not exceed the jurisdictional amount. Perhaps more realistically, we can rely on the extent of the claimed pecuniary burden on defendants were plaintiffs to prevail." Williams, 539 F.2d at 804 n.1.

[9] "States may sue the United States in district courts. The Commonwealth claims that the $10,000 jurisdictional amount is satisfied because the matter in controversy concerns pollution of interstate waters. Since the pecuniary burden on the VA would probably be in excess of $10,000 should the Commonwealth prevail, we think that the jurisdictional amount requirement is satisfied." Massachusetts, 541 F.2d at 122 n.3 (citations omitted).

-11-

correctly, <u>Williams</u> -- which involved a suit for declaratory relief alleging the unconstitutionality of a National Park Service regulation -- actually assessed the amount in controversy through a plaintiff's lens. <u>See</u> 539 F.2d at 804 n.1 ("[W]e are unwilling to say on this record that the claimed interests of one or more plaintiffs . . . may not exceed the jurisdictional amount."). And <u>Massachusetts</u> -- which involved a suit filed by a state alleging violations of the Federal Water Pollution Control Act, as amended 33 U.S.C. § 1251 et seq. (and which was dismissed on a different jurisdictional basis) -- does not give us much to go on due to the brevity of its amount-in-controversy discussion (jurisdictional amount was not at issue). While the footnote's reference to "the pecuniary burden on the [Veterans Administration]" appears to signal the application of a defendant-viewpoint approach, it is hard to discern if that is what the court meant in light of the preceding sentence acknowledging Massachusetts's claim that "the matter in controversy concerns pollution of interstate waters." 541 F.2d at 122 n.3. Read together, the court's reference to the VA's burden may simply be its assessment of the value of the pollution (i.e., the court's assessment of Massachusetts's -- the plaintiff's -- minimal damages). In any event, the brief discussion in the <u>Massachusetts</u> footnote is arguably the sort of "drive-by jurisdictional ruling[]" that the Supreme Court has instructed has "no precedential effect." <u>Steel Co.</u> v. <u>Citizens for</u>

a Better Env't, 523 U.S. 83, 91 (1998).  As such, neither footnote aids CE.

As for out-of-circuit cases cited by CE, two of them -- In re Brand Name Prescription Drugs Antitrust Litigation, 123 F.3d 599 (7th Cir. 1997), and In re Ford Motor Co./Citibank (South Dakota), N.A., 264 F.3d 952 (9th Cir. 2001) -- actually weaken its argument.  In these cases, both courts adamantly maintained that the non-aggregation rule could not be ignored simply by applying a defendant-viewpoint approach.  The court in In re Brand Name -- which involved consolidated class actions seeking, inter alia, injunctive relief -- held that a defendant's cost to comply with each plaintiff's claim for injunctive relief could not be aggregated to satisfy the amount-in-controversy requirement, expressly emphasizing that "[w]hatever the form of relief sought, each plaintiff's claim must be held separate from each other plaintiff's claim from both the plaintiff's and the defendant's standpoint.  The defendant in such a case is deemed to face multiple claims for injunctive relief, each of which must be separately evaluated."  123 F.3d at 610 (citing Snow v. Ford Motor Co., 561 F.2d 787, 790 (9th Cir. 1977)).  Likewise, in In re Ford Motor Co. -- which involved multiple plaintiffs seeking to sue on behalf of six million putative class members -- the court stressed that the "either viewpoint rule" does not extend to class action suits (regardless of whether the class has been certified) and that

"logic would dictate that it should [also not extend to] multi-party complaints," noting

> [w]hile it may seem paradoxical to decline jurisdiction in the multiplaintiff setting, where the potential loss to defendants typically is well beyond the jurisdictional amount threshold, it is implicit in the rule that forbids aggregation of class members' separate claims that it will sometimes be more difficult for a party asserting federal jurisdiction to establish the minimum amount of controversy in a multiplaintiff case than in a much smaller single-plaintiff case.

264 F.3d at 958 (alterations omitted) (internal quotation marks omitted).  The court explained that in these cases the "either viewpoint" rule must yield to the non-aggregation rule, inasmuch as aggregation is the threshold question, which "must be resolved affirmatively before total detriment to the defendant can be considered."  Id. at 958-59 (alterations omitted) (citations omitted).  According to the In re Ford Motor Co. court, when "each plaintiff is asserting an individual right[,] . . . the test is the cost to the defendants of an injunction running in favor of one plaintiff."  Id. at 959 (citations omitted).  Therefore, if we follow the reasoning of In re Brand Name and In re Ford Motor Co., the amount in controversy in this case from American's perspective is the amount it would have to pay one plaintiff, CE, not the total amount it would have to pay the putative Cook County class members.  And, we recall, CE's individual damages claims cannot exceed $75,000.

-14-

CE also misguidedly relies on <u>Meridian Security Insurance Co.</u> v. <u>Sadowski</u>, 441 F.3d 536 (7th Cir. 2006), to support its contention that we should assess the amount in controversy from American's perspective. While CE correctly asserts that the Seventh Circuit "looked to the magnitude of an insurer's potential indemnity obligation for an underlying junk fax lawsuit to determine the amount in controversy for a related insurance coverage declaratory judgment action," it misses a crucial point. Unlike the situation here, in <u>Sadowski</u>, the insurance company was <u>the plaintiff</u>, and it had filed suit <u>against its insured</u>. 441 F.3d at 537. The insurance company was the party seeking a declaratory judgment that it had no duty to defend or indemnify its insured in a pending TCPA state court suit. <u>Id.</u> Accordingly, the Seventh Circuit (assessing the amount in controversy from the plaintiff's perspective) found that the insurance company had not aggregated the claims of multiple parties because "[f]rom its perspective there [was] only one claim -- by its insured, for the sum of defense and indemnity costs." <u>Id.</u> at 539. Here, American (the insurance company similarly situated to the plaintiff in <u>Sadowski</u>, in all but party status) is not asking us to declare its contractual obligation with Ernida (the insured). Quite the opposite, it is asking us not to do this. And CE does not explain why it should be able to stand in American's shoes or why it can

-15-

rely on anything other than its individual damages claim for less than $75,000.

The other caselaw cited by CE in its attempt to show courts have sanctioned jurisdiction where the amount in controversy is satisfied from the defendant's viewpoint is similarly unavailing and readily distinguishable. For instance, three cases -- <u>Oklahoma Retail Grocers Ass'n</u> v. <u>Wal-Mart Stores, Inc.</u>, 605 F.2d 1155 (10th Cir. 1979), <u>Wine Masters Cellars, LLLP</u> v. <u>Vinotemp International Corp.</u>, No. 11-cv-00623, 2011 WL 2621537 (D. Colo. Jul. 1, 2011), and <u>In re M3Power Razor System Marketing & Sales Practices Litigation</u>, Civil Action Nos. 05-11177-DPW, 05-12336-DPW, 2007 WL 128846 (D. Mass. Jan. 11, 2007) -- do not involve the claims of multiple plaintiffs. All three are single plaintiff versus single defendant cases, which do not disrupt the anti-aggregation rule (regardless of which party's perspective is ultimately considered) because there is no one to aggregate with. See <u>Okla. Retail Grocers Ass'n</u>, 605 F.2d at 1159-60 (looking at the impact on a defendant corporation, including the cost of injunctive relief, in a suit brought by a retail grocers association); <u>Wine Masters Cellars, LLLP</u>, 2011 WL 2621537, at *4 (looking at the cost to a limited liability limited partnership of not securing the injunction it sought against a corporation); <u>In re M3Power Razor Sys.</u>, 2007 WL 128846, at *4 (looking at the cost to a defendant corporation in a case brought by individual plaintiff seeking

-16-

injunctive relief requiring defendant to make corrective advertising).

Another case -- Hambell v. Alphagraphics Franchising, Inc., 779 F. Supp. 910 (E.D. Mich. 1991) -- did not even entail the application of a defendant-viewpoint approach. Although the court noted that the interests of both parties could be considered when making an amount-in-controversy determination, it did not do so, seemingly because the amount was the same from both the plaintiffs' and the defendants' perspectives. See id. at 912 (looking at the amount of the possible award in the underlying arbitration as the amount in controversy in a suit seeking injunctive relief to prevent an arbitration from proceeding).

The two remaining cases -- Tatum v. Laird, 444 F.2d 947 (D.C. Cir. 1971), rev'd on other grounds, 408 U.S. 1 (1972), and Petrey v. K Petroleum, Inc., No. 6: 07-168, 2007 WL 2068597 (E.D. Ky. Jul. 16, 2007) -- do not involve claims that are easy to put a price tag on from the plaintiff's perspective. There, plaintiffs sought either declaratory or injunctive relief to affirmatively protect and enforce individual rights against the defendants' purported conduct; the court in at least one case -- in Tatum -- expressly underscored the unique setting which called for relying on the defendant's viewpoint. See Tatum, 444 F.2d at 951 (plaintiffs sought declaratory judgment that the Army's surveillance of lawful civilian political activity was

unconstitutional, injunctive relief enjoining it from engaging in future similar activity, and destruction of all data obtained illegally); Petrey, 2007 WL 2068597, at *3 (plaintiffs sought a declaration of superior title to certain real property upon which the defendant intended to produce natural gas). In these cases, the value of the object of the litigation is not as straightforward as it would be in an action for the recovery of specific property or monies, for example. Putting a precise dollar amount on non-monetary rights can be a difficult task, if not an impossible one in certain cases. (After all, the value of the right sought to be gained by a plaintiff is not always quantifiable). It is logical and more feasible in these cases that the amount in controversy be assessed from the defendant's perspective (i.e., the cost to the defendant if the right is enforced) because the cost of complying with a particular remedy may be easier to discern. Unfortunately for CE, that is not the case in actions where the value of the property or the rights involved is apparent or easily ascertainable, as is the case here.

With no reason to depart from the general rule that CE cannot aggregate its claim with the claims of the other putative Cook County class members to meet the jurisdictional amount threshold, and CE's individual claim being less than $75,000, it appears to a legal certainty that the matter in controversy does not exceed the sum or value of $75,000, as required by 28 U.S.C. §

-18-

1332.  Despite the litany of caselaw misfits, a defendant-viewpoint approach hardly helps CE avoid this inevitable conclusion.  Indeed, for practical purposes the Cook County action remains a single plaintiff case; that state action has been pending since 2008, with the class action question apparently continuing to remain open in 2014.  And, the federal action is, on all fronts, a single plaintiff case.  Therefore, from American's perspective, while there is some measure of potentiality that the insurance coverage question might expose it to more than the circumscribed damages sought by CE, this liability exposure does not fare beyond the abstract at this juncture and under these circumstances.  For now, we remain certain: the potential exposure, at this point, in dollars and cents is less than $75,000 by CE's own choosing.

## CONCLUSION

For the reasons set forth above, we vacate the district court's order dismissing the case for lack of standing and remand this case with instructions to dismiss for lack of subject-matter jurisdiction.  Costs are awarded to the appellee.